**Donald Andrew TANKOY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–00154–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 24, 1987.

Ernest F. Clouser, Houston, for relator appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Winston E. Cochran, Jr., Mike Anderson, Harris County Asst. Dist. Atty., Houston, for respondent appellee.

Before EVANS, C.J., and LEVY and BASS, JJ.

OPINION

LEVY, Justice.

Appellant was indicted for possession of cocaine weighing more than 200 grams and less than 400 grams, with the intent to deliver. Appellant first moved to suppress the cocaine as the fruit of an illegal arrest,

search, and seizure, which the trial court denied, and thereafter pled no contest to the lesser offense of possession of cocaine weighing more than 28 grams but less than 400 grams. The court assessed his punishment at seven years confinement and a $1 fine.

Appellant asserts in his sole point of error that the trial court erred in overruling his motion to suppress because the evidence seized was the result of an illegal arrest, search, and seizure, in violation of his federal and state constitutional rights.

At the suppression hearing, Officer R.C. Stewart testified that on or about July 18, 1985, he was observing an inbound flight from Miami at Houston's Intercontinental Airport. Stewart observed appellant and appellant's partner, Nelson, deplane a few passengers apart from each other. Both appellant and Nelson approached the outbound flight monitor and observed the crowd, rather than focusing on the monitor. Stewart testified that both individuals appeared nervous, were perspiring, watched the crowd as if expecting to be followed, and pretended that they were not acquainted, even though they were giving subtle hand and head signals to each other.

With his suspicions aroused by appellant's similarity to a theoretical "courier profile," Stewart followed appellant as he started for the baggage claim area while Stewart's partner, Officer Oscar Burnias, monitored Nelson, who stopped to make a phone call. Appellant waited for Nelson and then all four men proceeded to the baggage claim area where appellant and Nelson stood together a few feet apart and conversed but did not look at one another. The two men waited at carousel number five but their bags did not appear. Eventually both left the terminal without their checked baggage.

Outside the terminal on the sidewalk, both men were approached by Stewart and Burnias. Stewart asked appellant if he could speak to him and appellant consented. Stewart asked appellant if he had just arrived and appellant answered "Yes," and told Stewart that he had arrived from Miami. Stewart identified himself as a police officer and asked to see appellant's identification. Appellant produced a ticket folder with two tickets, one for Donald White and one for Bass Walker, and three baggage claim tickets. Appellant also produced a Florida driver's license with the name Donald Tankoy. Appellant claimed as his own the ticket with the name Donald White and explained that his wife had purchased the ticket for him in her maiden name. Stewart then asked for permission to search appellant's carry-on bag. Appellant consented and the search revealed nothing.

Stewart then asked appellant why he was leaving the airport without his checked luggage. Stewart said appellant replied that he had looked for his luggage but could not find it. Stewart suggested that appellant had waited at the wrong carousel. Appellant told Stewart that he wanted to get his baggage and Stewart said that he would escort him to the correct carousel, carousel number three.

Appellant approached carousel three and recognized his luggage. He picked up two bags and proceeded to leave. Stewart asked appellant about the third bag, and appellant claimed that it was Nelson's bag. Stewart asked for permission to search appellant's two checked bags and appellant consented. The search revealed nothing. Stewart then asked for permission to search the third bag, the claim ticket for which appellant had originally possessed. Appellant told Stewart to ask Nelson because it was his bag, although appellant did claim some of the clothing. Stewart asked appellant to accompany him to the first-aid room where Burnias was questioning Nelson. Appellant consented. During this walk, Stewart carried the third bag, allegedly with the consent of appellant. Stewart told Nelson that appellant claimed that the third bag belonged to Nelson. Both Nelson and appellant repeatedly denied ownership. The officers opened the bag and discovered cocaine wrapped in plastic inside a sock. After the search revealed cocaine, both men were placed under arrest. A subsequent search revealed more cocaine in appellant's underwear.

Appellant also testified at the suppression hearing. He readily admitted that he was traveling with Nelson and that he could not find his bags before leaving the airport. He testified that Stewart approached him and asked him for his ticket and identification and that he had complied with both requests. Appellant testified that he had told Stewart that he exited the airport to see if his girlfriend had arrived to pick him up. He further said that Stewart then identified himself as an officer and asked permission to search his carry-on bag. Appellant claimed that he felt that he was under arrest when Stewart identified himself. He said that Stewart had kept his bag, identification, and ticket as they reentered the airport to look for his other baggage. Appellant reiterated that the third bag did not belong to him.

At appellant's suppression hearing, the State argued that appellant's motion should be overruled, citing *Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Crim.App.1984), and *Perchitti v. State*, 659 S.W.2d 75 (Tex.App. —Houston [14th Dist.] 1983, no pet.). The State claimed that appellant fit the theoretical "courier profile," was perspiring, traveling under an assumed name, and had actually abandoned his luggage.

Appellant argued that the arrest was unlawful, citing *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Perchitti v. State*, 659 S.W.2d at 75. Appellant claimed that he felt that he was under arrest, and although he had properly identified himself, he was never told he could leave, and the agents had no outside information apart from the "courier profile."

The trial court denied appellant's motion, citing *Eisenhauer v. State*, 678 S.W.2d at 953–55. The court noted that a "courier profile" in itself is insufficient. It determined that the police had probable cause, based on evidence that appellant gave false identification, failed to pick up baggage for

which he held a claim ticket, disclaimed ownership of the bag, and disassociated himself from another individual with whom he had been traveling.

The first question that must be addressed is whether appellant was ever unlawfully "detained." The test for this is whether "a reasonable person would have believed he was not free to leave," *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). This test "is to be applied from the *suspect's* point of view...." *Daniels v. State*, 718 S.W.2d 702, 706 (Tex.Crim.App.1986) (emphasis added).

In *Mendenhall*, the United States Supreme Court wrote:

> Examples of circumstances that might indicate a seizure, even when the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877.

In *Daniels*, the court held that there was a "detention" requiring reasonable suspicion at the point when the narcotics officer identified himself and asked for consent to search the defendant's luggage. The court relied on several facts in making that determination: the defendant knew that the officer was armed; the officer said that he was conducting an investigation, implied that he could obtain a search warrant, and gave no indication that defendant could leave; and a few feet away, the defendant's companion had been stopped by another officer.

In *Perchitti*, the defendant was stopped by officers who asked the defendant for his airline ticket and identification. The officers then requested that the defendant move to another part of the airport and asked permission to search his suitcase. Perchitti did not answer, and the officers searched the suitcase. The court held:

Perchetti was "put into custody" when he was first told that he was suspected of transporting cocaine. It was reasonable for him to assume that he was under arrest at that time and that he could not object to the search of his person or property.

*Perchitti,* 659 S.W.2d at 77.

 In the present case, Stewart identified himself as a narcotics officer, and did not tell appellant he was free to leave. At the same time, Burnias had also stopped Nelson. There was no testimony that Stewart was armed; however, one stopped by a Texas peace officer conducting a narcotics investigation may reasonably assume that the officer is armed.

When Stewart identified himself as a police officer and asked appellant if he could search appellant's carry-on bag, it was likewise the functional but unarticulated equivalent of telling him that he was detained, i.e., a display of official authority such that "a reasonable person would have believed he was not free to leave." *United States v. Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877; *Eisenhauer v. State,* 678 S.W.2d at 955. Under such circumstances, peaceful submission to authority, with its implied power to compel, is not automatically to be equated with consent freely given. Indeed, the State conceded in *Daniels* that such inquiry was a detention. *Daniels,* 718 S.W.2d at 706. We hold that appellant was thus effectively "seized" within the meaning of the Fourth Amendment. Whether the officers had probable cause to seize the appellant must be adjudicated according to *Eisenhauer v. State,* 678 S.W.2d at 955, under which the notion of probable cause has been modified by the "totality of circumstances" test of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We are obliged to hold that the appellant's eccentric actions in the airport after arrival, particularly his abandonment of the baggage, surreptitious communications with Nelson, and use of aliases, furnished a substantial basis for the officers

to conclude that there was probable cause to detain the appellant. The arrest following was therefore valid.

The next question to be addressed is whether appellant may challenge the State's search of the third bag by asserting a privacy interest in it, or whether appellant had abandoned the suitcase.

The expression and operation of the abandonment rule have varied over time and from court to court. Annotation, *Search and Seizure: What Constitutes Abandonment of Personal Property Within Rule That Search and Seizure of Abandoned Property is Not Unreasonable—Modern Cases,* 40 A.L.R. 4th 381, 388 (1985). Some courts have seen abandonment as a matter of justiciability; other courts have stated that police retrieval of abandoned property is not a "seizure" within the Fourth Amendment. Recent cases have approached "abandonment" with the view that the Fourth Amendment protects individuals against official intrusion into areas *where they have a reasonable expectation of privacy,* defining and analyzing "abandonment" as an intentional relinquishment of that expectation with regard to the property in question. *Id.* at 388, 389. According to this latter view, whether property has been "abandoned" for Fourth Amendment purposes is primarily a question of intent, to be inferred from the words and actions of the parties and other circumstances surrounding the alleged abandonment. *Id.* at 389.

Many courts have adopted this latter view.[1] The Fifth Circuit has held that an *unconstitutional* seizure or arrest that prompts a disclaimer of property vitiates the disclaimer, and the State cannot rely upon the abandonment to make a warrantless search. *United States v. Morin,* 665 F.2d 765, 770–71 (5th Cir.1982); *United States v. Santia–Manriquez,* 603 F.2d 575, 578 (5th Cir.1979); *United States v. Beck,* 602 F.2d 726, 729–730 (5th Cir.1979); *accord,* in dicta, *United States v. Lucci,* 758

---

1. Some courts which have adopted this view include the Sixth Circuit in *United States v. Tolbert,* 692 F.2d 1041, 1045 (6th Cir.1982); the Ninth Circuit in *United States v. Gilman,* 684

F.2d 616, 619 (9th Cir.1982); and the United States District Court for the District of Columbia in *United States v. Foster,* 566 F.Supp. 1403, 1412–1413 (D.D.C.1983).

F.2d 153, 155 (6th Cir.1985). The Fourteenth Court of Appeals has also cited this principle in dicta. *Garcia v. State,* 704 S.W.2d 512, 516 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd).

The Fifth Circuit has held that the legality of a warrantless search of abandoned property turns on the voluntariness of the "abandonment." Abandonment, like consent, must be freely given to be effective. *Morin,* 665 F.2d at 770.

> [T]he issue is not abandonment in the strict property sense, but whether the person prejudiced by the search had *voluntarily* discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. (*Emphasis added.*)

*Morin,* 665 F.2d at 770.

Under this view, the validity of a search of allegedly abandoned evidence turns on the nexus between the alleged abandonment and the legality of a person's detention. Denials of ownership may be considered as evidence of abandonment of a privacy interest only if they occur during a *lawful* detention. *See Morin,* 665 F.2d at 765. It appears necessary, but perhaps trite, to repeat here that a search is not to be validated by what it finds. In law, it is good or bad *ab initio* and does not change character from its success. Or, in the words of Mr. Justice Frankfurter, "Vindicated anticipation of what an illegal search may reveal does not validate a search otherwise illegal." *Lustig v. United States,* 338 U.S. 74, 80, 69 S.Ct. 1372, 1375, 93 L.Ed. 1819 (1949). To thus allow searches without *actual* lawful justification would, in the Fifth Circuit view, tend to eviscerate the Fourth Amendment guarantee against unreasonable search and seizure.

While the Texas Court of Criminal Appeals has recognized that a defendant must show a reasonable expectation of privacy prior to asserting a Fourth Amendment claim, *see Goehring v. State,* 627 S.W.2d 159, 164 (Tex.Crim.App.1982), it has adopted a position contrary to that adopted by the Fifth Circuit when faced with the legal ramifications of a search of property to which a defendant has disclaimed ownership. The Texas Court of Criminal Appeals has held that a defendant who disclaims ownership, or throws property away, has for all purposes "abandoned" that property. Therefore, the officer's activity in pursuit of such abandoned property is not an unlawful "search and seizure." *See Harless v. State,* 473 S.W.2d 519, 520 (Tex. Crim.App.1971); *Gonzales v. State,* 461 S.W.2d 408, 409 (Tex.Crim.App.1970); *Vasquez v. State,* 663 S.W.2d 16, 25 (Tex.App. —Houston [1st Dist.] 1983, pet. granted). The Court of Criminal Appeals also has held that property seized after being thrown away in view of the police is not the fruit of the initial stop, *even if the stop was illegal. Gonzales,* 461 S.W.2d at 409. *See also Harless,* 473 S.W.2d at 520. Cf. *United States v. Tolbert,* 692 F.2d 1041, 1047– 1048 (6th Cir.1982); *United States v. Berd,* 634 F.2d 979, 987 (5th Cir.1981).

Accordingly, we are constrained to hold that the State's search of the third bag, containing the cocaine, was not the fruit of an illegal arrest because the detention, under *Eisenhauer v. State,* 678 S.W.2d at 955, was valid and also because the bag had already been abandoned by appellant, who thereby lost his standing to complain. Because the bag and its contents were "abandoned" by both appellant and Nelson, and no one asserted a right of privacy in it, the officers were free to open and search it without a warrant or consent. The record also reveals that the cocaine inside the bag was sufficient by itself to meet the weight requirements set forth in appellant's indictment.

We conclude on this basis that the trial court did not err in overruling appellant's motion to suppress. Appellant's sole point of error is overruled.

The judgment of the trial court is affirmed.