Harold **WILLIS, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. A14–89–00790–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 21, 1990.

---

James Sims and Constance Y. Singleton, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

MURPHY, Justice.

Harold Willis appeals his conviction for possession of a controlled substance with intent to deliver. Following a trial to the bench, punishment was assessed at twenty-five years confinement and a $10,000.00 fine. On July 26, 1990, this court issued an opinion reversing appellant's conviction and remanding the cause to the trial court. On July 30, 1990, the state filed its second motion for rehearing. We overrule the motion for rehearing, withdraw our opinion of July 26, 1990, and substitute the following opinion.

Appellant brings five points of error claiming the trial court erred in denying his motion to suppress evidence and in finding appellant guilty where no evidence established "knowing possession" by appellant. We reverse.

Officer M.P. Foehner and Special Agent Alan Herring of the Drug Enforcement Agency, on assignment to intercept drug couriers, were observing persons deplaning from a flight from Fort Lauderdale at the Houston Intercontinental Airport. There was no information that any contraband was on board this particular flight. Officer Foehner testified that he does not use a "drug courier profile," but that he looks for "uncommon characteristics." The two officers, who were not wearing uniforms, observed appellant at Gate 10. Officer Herring testified that appellant appeared nervous. Officer Foehner stated that when the plane arrived, two black males approached appellant and handed him what appeared to be a red baggage claim ticket. The officers began surveillance of the three men who walked toward the baggage area. Both officers testified that the three men continued to look around at persons in the airport as if to check whether anyone was watching them. One of the black males, Mr. Parks, was carrying a small suitcase.

Upon arrival at the baggage area, appellant entered and the other two men waited outside the secured area. The officers testified that, at this point, the men appeared to notice the officers' presence. Appellant

picked up a blue suitcase and showed the ticket to the guard. One of the black males then walked toward the private car exit and appellant followed. Parks walked to the taxicab exit. Officer Foehner followed appellant and Agent Herring followed Parks to the taxicab exit. Officer Foehner testified that he then approached appellant, identified himself as a narcotics investigator, and asked the following questions:

> [Officer Foehner] I asked him first of all if he had just arrived at the airport or whether he was leaving or whether he was there to meet someone.
>
> [Prosecutor] And what was his response to that question?
>
> [Officer Foehner] His response was that he was there to pick up some luggage for somebody.
>
> [Prosecutor] Do you recall exactly what he said to you?
>
> [Officer Foehner] He stated that he was there to pick—that a lady had given him fifty dollars at the ticket lobby to pick up a piece of luggage for her and bring it down to her car or bring it to her in the private car area.

Officer Foehner denied that appellant was under arrest at this time and added that he did not handcuff or restrain appellant, nor draw his weapon. Officer Foehner next inquired about the luggage and appellant said that it belonged to a woman he had met in the lobby. The officer asked appellant if the woman was in the private car area and appellant replied he did not see her.

Officer Foehner then asked if he could look inside the bag. Appellant replied "since it wasn't his bag he didn't feel like he could let me look in it." The officer testified that he then told appellant that he intended to "maintain custody of the bag," that appellant was free to leave, but that the officer needed some information so that they could return the bag to him later. Appellant accompanied the officer inside the terminal and into a first aid room. Agent Herring brought Parks in the room and Parks also denied ownership of the suitcase. Officer Foehner again asked for consent to open the bag and appellant maintained that the bag was not his. The officer testified that he then decided the bag had been abandoned and another officer opened it, revealing a can of bearing grease and two plastic bags later determined to contain cocaine. By this time, four officers were in the room with appellant and Parks. Appellant and Parks were then placed under arrest and given their statutory warnings.

■ In points of error one through four, appellant challenges the trial court's denial of his motion to suppress evidence seized from the suitcase because: (1) the police conduct in stopping appellant constituted an illegal seizure, (2) the police conduct in taking appellant to the first aid room constituted an illegal arrest, (3) the search and seizure was without probable cause, and (4) the appellant did not abandon the suitcase. Turning first to the issue of abandonment, Officer Foehner testified that he believed the bag was abandoned when appellant denied ownership of the bag. Where an appellant raises questions concerning the voluntariness of the abandonment of property, the Texas Court of Criminal Appeals has held that the court must determine whether the appellant intended to abandon the property and did so voluntarily and independently of any police misconduct. *Hawkins v. State*, 758 S.W.2d 255, 257 (Tex. Crim.App.1988). Thus, we must first consider whether there was police misconduct in the initial encounter with appellant.

■ Not all encounters between individuals and police officers constitute seizures implicating the Fourth Amendment. *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983). An officer may stop a suspicious individual briefly "to determine his/her identity or to maintain the status quo while obtaining further information." *Comer v. State*, 754 S.W.2d 656, 657 (Tex.Crim.App.1988) (citing *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). A seizure does occur, however, if the officer detains the individual, even briefly, and restrains him from walking away. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20

L.Ed.2d 889 (1968); *Molina v. State*, 754 S.W.2d 468, 472 (Tex.App.—San Antonio 1988, no pet.). The test is whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988); *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

■■■ To justify this type of investigatory stop, an officer must have "specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from the facts, would reasonably warrant the intrusion on the freedom of the citizen detained. . . ." *Id.* Rather than stopping the individual based on a "hunch," the officer must reasonably suspect "that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with unusual activity and some indication that the activity is related to a crime." *Smith v. State*, 759 S.W.2d 163, 165 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). Finally, a temporary detention is not justified where the observed conduct is "as consistent with innocent activity as with criminal activity." *Id.*

The state concedes a temporary detention or investigative stop occurred, but claims the stop was justified by "(1) the appellant's nervous behavior prior to the plane's arrival; (2) the appellant's nervous behavior during the walk along the concourse; (3) the appellant's nervous behavior at the luggage carousel; (4) the appellant's suspicious actions in splitting up with the two young black males he had accompanied from the gate; (5) the appellant's obvious lies that he was picking up the suitcase for a lady who gave him fifty dollars and the claim check in the lobby; (6) the appellant's obvious lie that he was alone; and (7) the appellant's reluctance to allow the officer to look in the suitcase." Thus, the state contends a temporary detention did not occur until after the officer had asked several questions and sought appellant's consent to search the suitcase. We agree.

■■■ The officer's initial contact with appellant, during which the officer identified himself and asked appellant whether he was leaving or arriving, did not constitute a detention, but was a "consensual encounter," *see Florida v. Rodriguez*, 469 U.S. 1, 7, 105 S.Ct. 308, 311, 83 L.Ed.2d 165 (1984), or "mere contact." *Lopez v. State*, 681 S.W.2d 788, 790 (Tex.App.—Houston [14th Dist.] 1984, no pet.). Such encounters do not implicate Fourth Amendment protections. Thus, reasonable suspicion was not required at this point and none existed. Appellant's nervousness at the gate, in the concourse, and at the baggage claim area is insufficient indicia of criminal conduct, especially where the police officers in the instant case were not in uniform and the three men were not reacting nervously to the presence of the police. *See Daniels v. State*, 718 S.W.2d 702, 705 (Tex.Crim.App. 1986), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds, Juarez v. State*, 758 S.W.2d 772, 780 n. 3 (Tex.Crim.App.1988). Furthermore, appellant's exit from the airport with only one of the two men he met at the gate are as consistent with innocent activity as criminal activity and would not have justified a temporary detention. *See Daniels*, 718 S.W.2d at 705–06.

■■■ Following this initial contact, the officer asked appellant about ownership of the bag and requested consent to search it. At this point, the encounter became a detention. *See Daniels*, 718 S.W.2d at 706. The officer asked if he could look inside the bag and when appellant refused to consent, the officer directed appellant to a small room in the airport, ostensibly to get appellant's name and address for return of the bag. We doubt that appellant felt free to leave at this point, and certainly appellant understood that the officer would not allow him to leave with the suitcase. Because we find a detention of appellant at this point in the encounter, we must determine whether the officers had reasonable suspicion justifying the stop. In this determina-

tion, we turn to two cases involving similar airport encounters.

In *Tankoy v. State*, 738 S.W.2d 63, 64 (Tex.App.—Houston [1st Dist.] 1987, no pet.), an officer observed appellant and his partner, Nelson, deplane separately. Both individuals appeared nervous and pretended not to know each other, although they gave "subtle hand and head signals to each other." *Id.* On the way to the baggage claim area, appellant waited while Nelson made a phone call. *Id.* Both men then proceeded to the baggage area, where they conversed but did not look at each other. *Id.* Both men left without claiming any baggage. *Id.* The court first noted that the officer's identification of himself as a narcotics investigator and his request to search appellant's carry-on bag was "the functional but unarticulated equivalent of telling [appellant] that he was detained, i.e., a display of official authority such that 'a reasonable person would have believed he was not free to leave'." *Id.* at 66. Although the court found a seizure of appellant, they concluded that appellant's use of an alias, his surreptitious communication with his partner, and the abandonment of his luggage were sufficiently suspicious acts justifying the detention. *Id.*

More analogous to the instant case is *Daniels*, another case involving Houston police officers observing passengers deplaning from a flight from Florida. *See Daniels*, 718 S.W.2d at 703. The officers testified that two men, including Daniels, deplaned separately but nodded to each other and appeared nervous on the walk to the baggage area. *Id.* at 704. While in the baggage claim area, one suspect asked the other suspect to hold his bag while he used the restroom, then the two talked and joked until Daniels' suitcase arrived. *Id.* After Daniels retrieved his bag, the two men took an elevator to the parking area and the officers joined them. *Id.* One officer approached Daniels and asked if the two men were travelling together, to which Daniels replied that they were not. *Id.* The officer then asked for Daniels' identification and airline ticket. *Id.* Daniels' ticket folder contained two tickets. *Id.* When the officer identified himself as a narcotics officer, Daniels grew more nervous. *Id.* The officer asked for permission to search Daniels' bag, advising that he could refuse and require a search warrant, but Daniels consented and the search revealed illegal drugs. *Id.*

The *Daniels* court found the encounter became a detention requiring reasonable suspicion when the officer identified himself as a narcotics officer and sought consent to search appellant's bag. *Id.* at 706. At this point, the bases for suspicion articulated by the officer were appellant's increased nervousness, a different initial on his airline ticket than on his driver's license, and denial that he was travelling with the other man while carrying two tickets in his folder. *Id.* The court held the facts articulated by the officers were insufficient grounds for suspecting criminal activity. *Id.*

In the instant case, Officer Foehner testified that appellant met two men upon their arrival from Fort Lauderdale, who appeared to hand appellant a baggage claim ticket. The three men then walked to the baggage claim area glancing around nervously. The officer further testified that, upon arrival at the baggage claim area, the men apparently spotted the officers and continued to look around nervously. As discussed previously, nervousness is not a reasonable basis for suspecting criminal activity. *See Daniels*, 718 S.W.2d at 705, 707. Although appellant's use of a different airport exit than the other suspect and his explanation that he was retrieving a bag for a woman who had offered to pay him may support the conclusion that these actions were out of the ordinary, we do not find these actions support the officer's conclusion that appellant's conduct was related to criminal activity. *See Daniels*, 718 S.W.2d at 707. Because we find the facts articulated by the officers insufficient to constitute reasonable suspicion, we hold that the officer's investigative stop of appellant was unjustified.

Having found the detention unlawful, we must determine whether, indepen-

dent of this misconduct, appellant intentionally and voluntarily abandoned the suitcase. *See Hawkins,* 758 S.W.2d at 257–58. In the instant case, appellant denied ownership after Officer Foehner identified himself as a narcotics officer and began questioning appellant about the suitcase. We cannot conclude that this denial of ownership was independent of the unjustified detention. On the contrary, appellant's denial of ownership was, in all likelihood, the direct result of the unlawful police conduct. *See id.* at 260. Finding no support for holding that, independent of the unlawful detention, appellant intended to abandon the bag and did so voluntarily, appellant's denial of ownership of the property "did not remove the taint of the illegal police conduct." *Comer,* 754 S.W.2d at 659. Consequently, the trial court erred in denying appellant's motion to suppress the evidence seized.

■ In his final point, appellant contends the trial court erred in finding him guilty where no evidence established "knowing possession" as required for conviction. Although appellant uses "no evidence" language, the correct standard of reviewing the evidence in a criminal case is the sufficiency standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App. 1989). This standard requires an appellate court "to determine whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'." *Butler,* 769 S.W.2d at 239 (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789). Thus, we must determine whether the state has proven the element of "knowing possession" beyond a reasonable doubt.

To establish possession, the state must prove two elements: "(1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband." *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985). In the instant case, appellant had control over the contraband because he had actual possession of the suitcase containing the cocaine. As to appellant's knowledge that the suitcase contained contraband, the state points to appellant's nervousness and his "obvious lie" to the officer that he was picking up the bag for a woman who had paid him. Appellant testified that he had gone to the airport to pick up his two stepsons. Although appellant admitted the falsity of his statement to the police, he explained that he became apprehensive as to the contents of the bag when the officer identified himself as a narcotics investigator. Appellant claimed that he lied to protect his stepson.

■ As a reviewing court, we may not weigh the evidence. *See Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). The jury has considered "all the evidence firsthand, viewing the valuable and significant demeanor and expression of the witnesses, [and] has reached a verdict beyond a reasonable doubt." *Id.* Their verdict must stand unless we find it irrational or unsupported by more than a scintilla of evidence. *See id.* Having reviewed the evidence in the instant case, we find that a rational trier of fact could have found the element of "knowing possession" beyond a reasonable doubt. We overrule point five.

We reverse the judgment and remand the cause to the trial court.