**Jose Virgilio REYES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–93–00009–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 20, 1995.

Discretionary Review Refused
Aug. 23, 1995.

Henry L. Burkholder, III, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before YATES, FOWLER and DRAUGHN,* JJ.

## OPINION

FOWLER, Justice.

Appellant pled guilty before the trial court to the offense of possession of marijuana, and was sentenced to eight years in the Texas Department of Criminal Justice, Institutional Division. He appeals the trial court's denial of his motion to suppress the evidence, claiming the marijuana was illegally seized because the police officers did not have reasonable suspicion to detain him. Because we conclude that the police officers had reasonable suspicion to detain appellant and lawfully searched his suitcase containing the marijuana, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Houston Police Officer R.B. Stewart was conducting undercover surveillance of the downtown Houston bus station, watching for drug couriers, when he noticed appellant approaching the doors of the station. Appellant first caught Officer Stewart's eye because he was more well-dressed than the typical bus traveler, and was carrying an "extremely heavy" large suitcase with an inappropriately large brass lock. Appellant appeared very nervous, and kept looking over his shoulder and around the station, as if to see if anyone was watching him. He bought a one-way ticket to New York City with two $100 bills from a large roll of money, and filled out a luggage tag for the suitcase with only "Jose Garcia—New York City," and no street address.

Based on his fifteen years of experience as a narcotics officer, Officer Stewart suspected appellant of being a narcotics courier, and decided to talk to him. When appellant went back out to the sidewalk outside the bus station, Officer Stewart approached him, showed his identification, and asked if he could speak to him a minute. Appellant stopped, looked at the identification, and said he would talk to the officer after he paid his cab driver, who was waiting in front of the station. Because he thought appellant still appeared extremely nervous, Officer Stewart signalled across the street to Officer Ralph Rodriguez to keep an eye on appellant, too. As soon as appellant paid the cab driver, he "broke and ran" away from Stewart, discarding his backpack as he ran. Stewart yelled "Police," but appellant did not stop, so Stewart pursued appellant on foot. Rodriguez picked up the backpack, and chased appellant in his car.

Rodriguez caught appellant and arrested him for evading detention, and then looked in the backpack and found a loaded semiautomatic pistol. The two officers escorted appellant back to the bus station, read him his rights, and questioned him about the suitcase which appellant had checked. They also searched appellant and found a key fitting the suitcase's lock. When Stewart told appellant he wanted to search the suitcase, appellant replied that it was not his and Stewart could do whatever he wanted with it. As the officers were about to open the suitcase, they told appellant that they considered the suitcase abandoned and that they were going to open it, because he said it was not his. Appellant said that was fine, and continued to deny the suitcase was his. The officers unlocked the suitcase and found sixteen semiautomatic pistols, some clothes, and approximately one kilogram of marijuana.

Before trial, appellant filed a Motion to Suppress Evidence, seeking to exclude the marijuana, the testimony of the police offi-

---

* The Honorable Joe L. Draughn sitting by assignment.

cers, and his incriminatory statements, if any. He claimed the warrantless seizure of the evidence violated his rights under the United States and Texas Constitutions, because the officers lacked probable cause or consent to search. *See* U.S. CONST. amends. IV, V, IX, XIV; TEX. CONST. art. I, § 9; TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1995). After a hearing, the trial court denied appellant's motion, but granted appellant leave to appeal the denial. Appellant then pled guilty but filed a timely notice of appeal of the motion to suppress.

## THE STATE'S PROCEDURAL CLAIM

■ As a preliminary matter, we address the State's claim that appellant waived his right to appeal the ruling on the motion to suppress. Citing TEX.R.APP.P. 50(a) & (d), the State argues that appellant has failed to bring forth a sufficient record on appeal because the appellate transcript does not contain a statement of facts from the hearing at which appellant entered his guilty plea. It is the appellant's burden to present a sufficient record to show error requiring reversal. Rule 50(d). Rule 50(d) requires the complaining party to present sufficient portions of the record to demonstrate reversible error and allow the reviewing court to consider all *relevant* evidence. *Greenwood v. State*, 823 S.W.2d 660 (Tex.Crim.App.1992) (emphasis added). Here, appellant complains of the denial of his motion to suppress, and he has provided the court with the complete statement of facts from the hearing on the motion. *Cf. Murphy v. State*, 864 S.W.2d 70, 72 (Tex.App.—Tyler 1992, pet. ref'd). This record contains all of the evidence relevant to our determination of whether the motion to suppress was properly denied. We find without merit the State's contention that appellant waived error during his plea hearing. The cases cited by the State concern waiver through a defendant's failure to object when the evidence was introduced *at trial.* Here, there was no trial, and it is obvious from the record that all parties had the same understanding that appellant would be appealing the denial of his motion to suppress.

## POINTS OF ERROR

In his first point of error, appellant contends the trial court erred in overruling his motion to suppress because the police officers lacked reasonable suspicion for appellant's initial detention. In his second point of error, appellant contends that if he abandoned his suitcase or consented to its search, the consent or search was the fruit of an unlawful arrest for evading detention. The answer to both points of error depends on whether the officers had reasonable suspicion to detain appellant, and the answer to that question depends in part upon if and when appellant was detained. Appellant also raises a third point of error, which he intends for us to consider only if we refuse to review the merits of his first two points of error.

## STANDARD OF REVIEW

■ In reviewing a decision on a motion to suppress, the appellate court must view the evidence in the light most favorable to the trial court's ruling. *State v. Hamlin*, 871 S.W.2d 790, 792 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd); *State v. Gilliam*, 832 S.W.2d 119, 121 (Tex.App.—Houston [14th Dist.] 1992, no pet.). At a suppression hearing, the trial judge is the sole judge of the witnesses' credibility, and the court's findings should not be disturbed absent a clear abuse of discretion. *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App.1990); *Hamlin*, 871 S.W.2d at 792.

## THE DETENTION ISSUES

### A. The Alleged Detention

■ The first question we must address is whether appellant was detained and, if so, when he was detained. The answer to this question turns on whether the encounter between appellant and Officer Stewart was consensual in nature. It is well settled that not every encounter between the police and a citizen is a detention implicating constitutional concerns. *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *State v. Grant*, 832 S.W.2d 624, 625–26 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). Police officers are as free as anyone to ask their fellow citizens questions. *Holla-*

day v. State, 805 S.W.2d 464, 471 (Tex.Crim. App.1991); *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986). Encounters between officers and citizens are judged by a reasonable person standard. If, upon encountering a police officer, a reasonable person would feel that he is free to go or free to refuse an officer's requests, the encounter is of a consensual nature, and does not constitute a detention. *Florida v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991); *Mitchell v. State*, 831 S.W.2d 829, 832 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). In a consensual encounter, an officer need not have any articulable reasons for having initiated the encounter, because Fourth Amendment concerns are not implicated. *Bostick*, 501 U.S. at 433, 111 S.Ct. at 2386.

■■■ A detention, on the other hand, does implicate constitutional concerns, although it is less of an intrusion on a person's Fourth Amendment right against unreasonable searches and seizures than an arrest. *Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968). A detention occurs if, in light of all the circumstances surrounding an encounter between a police officer and an individual, the officer's conduct would communicate to a reasonable person that he is not free to go, or not free to refuse the officer's requests. *Bostick*, 501 U.S. at 435, 111 S.Ct. at 2387. Because a detention is a limitation on an individual's freedom, an officer must have specific, articulable facts that the person being detained has committed, or is about to commit a crime. *Florida v. Rodriguez*, 469 U.S. 1, 5, 105 S.Ct. 308, 310, 83 L.Ed.2d 165 (1984); *Royer*, 460 U.S. at 498, 103 S.Ct. at 1324; *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879. Thus, to detain an individual, an officer needs to have some articulable facts relating to a crime, but need not meet the standard necessary to arrest an individual. As the United States Supreme Court said in *Rodriguez*, "[s]uch a temporary detention for questioning ... is reviewed under the lesser standard enunciated in [*Terry*], and is permissible because of the 'public interest involved in the suppression of illegal transactions in drugs or of any other serious crime.'" *Rodriguez*, 469 U.S. at 5, 105 S.Ct.

at 310 (quoting *Royer*, 460 U.S. at 498–99, 103 S.Ct. at 1324–25).

■■■ With these guidelines in mind, we turn to the facts of the case before us to determine if a detention occurred. The trial court found that appellant was detained, but did not specify when the detention occurred. Appellant argues that he was detained when Officer Stewart first approached him and asked if he could talk to him. We disagree with both the trial court and appellant.

At the initial encounter, Officer Stewart merely told appellant he was a police officer, showed appellant his identification, and asked if he could speak to appellant. He did not display a gun, threaten appellant, tell appellant he was a narcotics agent, tell appellant he had to comply with his request, ask to search appellant's bag, or maintain he had the right to do so. *See Crockett v. State*, 803 S.W.2d 308, 310 (Tex.Crim.App.1991). At that point, appellant could have refused the officer's request and walked away. *See Bostick*, 501 U.S. at 437, 111 S.Ct. at 2388 (stating no seizure occurs so long as the officers do not indicate that the person being questioned must comply with their requests). In fact, appellant *did* walk away to pay his cab fare, telling the officer he would speak with him after paying. Clearly, there was no compulsion present in the meeting. *See Holladay*, 805 S.W.2d at 471–472; *Grant*, 832 S.W.2d at 627. *Cf. Royer*, 460 U.S. at 502–503, 103 S.Ct. at 1326–1327; *Daniels*, 718 S.W.2d at 706. Not until appellant ran from the officers after he paid his cab fare, and they yelled for him to stop, did the officers attempt to detain appellant.

It is to this point in time—when the chase began—that we now must turn our attention. For, although we hold that Officer Stewart did not detain appellant, and at most attempted to detain appellant, Officer Stewart arrested appellant for evading detention, and so the State must meet a specific burden for us to sustain the validity of the arrest.

**B. Arrest for Evading Detention**

■■■ A person evades detention if he intentionally flees from a person he knows is a peace officer attempting to detain him.

*See* TEX.PENAL CODE ANN. § 38.04(a) (Vernon Supp.1994). It is an exception to subsection (a) that the attempted detention is without reasonable suspicion. TEX.PENAL CODE ANN. § 38.04(b) (Vernon Supp.1994).[1] A detention is lawful only if the officer has specific articulable facts which *would have* justified the suspect's detention. *See Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *Hoag v. State,* 728 S.W.2d 375, 380 (Tex.Crim.App.1987). These facts must result in a reasonable suspicion that the person actually was, had been, or soon would be engaged in criminal activity. *Crockett,* 803 S.W.2d at 311; *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App. 1983). Circumstances which raise a suspicion that illegal conduct is taking place need not themselves be criminal; they only need include facts which render the likelihood of criminal conduct greater than it would be otherwise. *Crockett,* 803 S.W.2d at 311. In this case, we look to all of the circumstances leading up to and including appellant's flight, because this is when an attempt was made to detain appellant. "Among the circumstances that can give rise to reasonable suspicion are the officer's knowledge of the methods used in recent criminal activity and the characteristics of persons engaged in such illegal practices." *United States v. Mendenhall,* 446 U.S. 544, 563, 100 S.Ct. 1870, 1882, 64 L.Ed.2d 497 (1980). In addition, " '[i]n all situations the officer is entitled to assess the facts in light of his experience.' " *Id.* at 564, 100 S.Ct. at 1882 (Powell, J., concurring) (quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 884–85, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975)).

 At the hearing on the motion to suppress, Officer Stewart testified that he had fifteen years experience in the narcotics division of the police force. He said that he considered appellant a likely drug courier and therefore engaged in criminal activity. When asked why he thought appellant fit the drug courier profile, Officer Stewart offered the following facts:

1. Appellant was better dressed than the average bus traveler;

2. Appellant was carrying a large, new, extremely heavy suitcase;

3. The suitcase was locked with an inappropriately large brass lock;

4. Appellant appeared extremely nervous, and looked around to see if anyone was watching him;

5. Appellant paid for his ticket in cash— two $100 bills taken from a large roll of money;

6. Appellant was traveling to New York City—a "source city" for drugs;

7. Appellant labeled his suitcase only with a name and city, no street address.

In addition to the above, and most importantly, appellant took off running after he paid the cab driver. Flight undoubtedly was the straw that broke the camel's back and sealed appellant's fate.[2] *See e.g., Washington v. State,* 660 S.W.2d 533, 535 (Tex.Crim.App. 1983) (stating that flight from a law enforcement officer can, in appropriate circumstances, provide the key ingredient justifying action by a police officer). *See also Muniz v. State,* 672 S.W.2d 804 (Tex.Crim.App.1984) (stating furtive actions and flight at the approach of law officers, when coupled with the officer's specific knowledge relating the suspect to a crime, are proper factors to be considered in the decision to make an arrest).

 Flight *alone* may not justify an investigatory detention. *See Gurrola v. State,* 877 S.W.2d 300, 303 (Tex.Crim.App. 1994) (stating mere flight does not justify an investigative detention); *Salcido v. State,* 758 S.W.2d 261, 264 (Tex.Crim.App.1988) (hold-

---

1. Appellant committed the crime of evading detention before September 1, 1994, the effective date of the penal code revision. *See* Acts 1993, 73rd Leg., ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed. The current version of the penal code provides that a person evades detention if he intentionally flees from a person he knows is a peace officer attempting to *lawfully* detain him. TEX.PENAL CODE ANN. § 38.04(a) (Vernon 1994).

2. We emphasize that our holding is based on all of the factors Officer Stewart enumerated, including flight. This opinion does not consider whether the first seven factors recounted by Officer Stewart (i.e. those things he noticed before appellant fled), as well as his experience, are sufficient in and of themselves to amount to reasonable suspicion. That question is not before us.

ing detention illegal when *only* articulable fact was that appellant ran when officers told him he was suspected of selling heroin). However, flight from a show of authority is a factor in support of a finding that there is reasonable suspicion that a person is involved in criminal activity. *Salazar v. State,* 893 S.W.2d 138 (Tex.App.—Houston [1st Dist.] 1995, no pet. h.). *See also State v. Como,* 821 S.W.2d 742, 745 (Tex.App.—Beaumont 1992, pet. ref'd) (finding officer had reasonable suspicion when car's license plates were altered and men standing by the car fled after seeing the police car); *Clarke v. State,* 785 S.W.2d 860, 869 (Tex.App.—Fort Worth 1990), *aff'd on other grounds,* 811 S.W.2d 99 (1991) (finding reasonable suspicion when defendant fit the description of home intruder and he began running when he saw the officer).

Taking into account all of the facts articulated by Officer Stewart, including appellant's flight, we hold that reasonable suspicion existed justifying appellant's detention, and therefore, the officers properly arrested appellant for evading detention. Appellant's first point of error is overruled.

### ABANDONMENT

As noted previously, appellant's primary argument in his second point of error is that he abandoned his suitcase only as a result of an unlawful arrest. We have decided that the arrest was lawful. Consequently, the abandonment was not the fruit of an unlawful arrest. Based on our reading of appellant's point of error, we could stop our inquiry here. However, out of an abundance of caution, we choose to read appellant's point of error broadly, and will consider if he did indeed voluntarily abandon the suitcase. TEX.R.APP.P. 74(d), (p).

For abandonment to occur (1) a defendant must intend to abandon the property, and (2) a defendant must freely decide to abandon the property; i.e. the decision must not be the product of police misconduct. *Salcido,* 758 S.W.2d at 263; *Comer v. State,* 754 S.W.2d 656, 659 (Tex.Crim.App.1986) (opinion on reh'g). *See also United States v. Beck,* 602 F.2d 726, 729–30 (5th Cir.1979). We have determined already that there was no unlawful conduct by the police officers in this case. Thus, our inquiry is whether appellant voluntarily abandoned the suitcase. *Comer,* 754 S.W.2d at 658. We also note that the court of criminal appeals has held that the validity of a search of allegedly abandoned property will turn on the nexus between the alleged abandonment and the legality of a person's detention. *Hawkins v. State,* 758 S.W.2d 255, 260 (Tex.Crim.App. 1988); *see also Tankoy v. State,* 738 S.W.2d 63, 67 (Tex.App.—Houston [1st Dist.] 1987, no pet.).

Officer Stewart testified that when they brought appellant back to the bus station, he denied the suitcase was his and told the officers they could do what they wanted with it. Even after the officers found a key on his person that fit the suitcase's lock, appellant still denied even having the suitcase at all. Officer Stewart told appellant he was going to search the suitcase, and appellant said that was fine. Under these circumstances, we find that "the intent to abandon could not be more clearly expressed." *Grant,* 832 S.W.2d at 627. We overrule appellant's second point of error.

Having found that reasonable suspicion existed for appellant's detention, that appellant did not abandon the suitcase as the result of an unlawful arrest, and that appellant voluntarily abandoned his suitcase, we find it unnecessary to address appellant's third point of error, which is conditioned upon our finding that appellant failed to preserve for appellate review the denial of his motion to suppress.

The judgment of the trial court is AFFIRMED.