# NO. 12-16-00030-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BARRY LYNN ARNOLD,* *APPELLANT* | § | *APPEAL FROM THE 145TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Barry Lynn Arnold appeals from his conviction for possession of a controlled substance. In one issue, he challenges the trial court's denial of his motion to suppress. We affirm.

## BACKGROUND

The State charged Appellant with two counts of possession of a controlled substance. Appellant filed a motion to suppress evidence seized as a result of his detention and arrest. At the suppression hearing, Officers Doug Read and Joseph Pitts, both with the Nacogdoches Police Department, testified that on September 15, 2013, around 8:00 p.m., they were trying to find "Rod Chapman," also known as "Harrod Chatman," to serve an arrest warrant. Read knew that Chapman was an African-American male with a medium to large build. He had a copy of Chapman's booking photograph, but he testified that a booking photograph can be unreliable due to age and any physical changes in the individual depicted in the photograph. He explained that he had served warrants on individuals who did not resemble their booking photographs.

When Read and Pitts arrived at Chapman's supposed residence, two individuals told them that Chapman was not home and they referred the officers to another location where they might find him. Read testified that the area is high crime, including gang activity, narcotics sales, gambling, and drinking. When the officers arrived at the new location, Read saw three or

four African-American males sitting outside.  Pitts believed five or six individuals were present.  Neither officer recalled fifteen to thirty people being present when they arrived at the scene.  Read saw one man, later identified as Appellant, stand up and begin quickly walking away.  He testified that because it was dark outside, he could not make out a description.  He and Pitts did not see anyone else trying to leave the scene.

Read explained that sometimes people will leave the scene when police approach because they are in possession of something illegal or they may simply not want to speak with police.  He also acknowledged that he had not seen Appellant commit a crime.  He presumed that Chapman knew about the warrant and, believing that Appellant might be Chapman attempting to avoid him, he pursued Appellant.  Read identified himself as a police officer and instructed Appellant to "stop," but Appellant continued walking and Read had to run to catch up to him.  Once Appellant turned the corner of one house and came into the light, Read realized he was not Chapman.  However, Appellant's evasive behavior made Read suspicious.

Read testified that Appellant eventually stopped.  Appellant told Read that he was trying to reach his vehicle on another street.  Read arrested Appellant for evading detention and searched Appellant to ensure that he was not in possession of any weapons or contraband.  The search yielded the discovery of a pocket knife, which Read placed in his pocket.  Additionally, Read saw two plastic bags on the ground nearby. They did not appear dirty, and were the type generally used to carry narcotics.  Under the circumstances, he believed Appellant disposed of the bags.  Read testified that the bags contained a substance that tested positive for cocaine.  Later on, at the police department, he examined the pocket knife, opened the blade, and noticed a white substance on the blade.  That substance also tested positive for cocaine.

Read testified that, on the day of the hearing, he learned that Chapman outweighs Appellant by approximately one hundred pounds.  He acknowledged that race is probably the only physical characteristic that Chapman and Appellant share.  Van Kelly, Jr., a private investigator, testified that Chapman weighs 267 pounds and was born in 1971, while Appellant weighs 150 pounds and was born in 1961.  He testified that this information was based on records updated after the charged offenses had occurred.

Emit James Garret, Jr. testified that he, along with twenty-five to thirty other people, mostly African-American males, were present on the night that Appellant was arrested.  He and Appellant were sitting on the porch of a house.  When the police arrived, everyone began

running. Garret testified that he and Appellant did not run, but walked away. He explained that most of the houses in the area are "no trespassing," and he knew that they were not supposed to be there. He did not want any "trouble" and did not want the police to talk with him.

At the conclusion of the hearing, the trial court denied the motion. The trial court explained its reasoning as follows:

> I do find that there was reasonable suspicion to begin going after [Appellant], and I find that there was probable cause to make the arrest, and I do find that there was actually no search of the inner part of the knife. That was simply an examination of evidence that they had obtained and, therefore, there was no search. And, therefore, they did not need a warrant for the examination of the knife.

Subsequently, Appellant pleaded "not guilty" to two counts of possession of a controlled substance. The trial court found Appellant guilty of count one regarding the cocaine found on the pocket knife, and sentenced Appellant to confinement for twenty months in state jail. Appellant pleaded "not guilty" to count two, and the trial court signed a judgment of acquittal as to that count.

## MOTION TO SUPPRESS

In his sole issue, Appellant contends that the trial court erred by denying his motion to suppress evidence of the cocaine found on the pocket knife. He contends that Officer Read lacked reasonable suspicion to detain him and lacked probable cause to arrest him. He maintains that the search, which resulted in the discovery of the pocket knife, resulted from an illegal arrest.

### Standard of Review

We review a suppression ruling for an abuse of discretion under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). First, we afford almost total deference to a trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the witnesses' credibility and the weight to give their testimony. *Id*. The trial court may believe or disbelieve all or part of a witness's testimony. *Id*. Second, we apply a de novo review to the trial court's application of law to the facts. *Id*. We will sustain the

trial court's ruling if it is reasonably supported by the record and correct on any legal theory. *Id*. at 447-48.

## Detention

Reasonable suspicion exists when the officer is aware of specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a person has engaged or is engaging in criminal activity. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). Because this standard is wholly objective, the officer's subjective intent is irrelevant. *Id*. All the standard requires is "'some minimal level of objective justification.'" *Id*. (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). "Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review." *Id*.

Although the record contains evidence showing that Appellant did not match Chapman's description, a fact that became apparent to Officer Read while he was pursuing Appellant, a reasonable suspicion analysis requires us to consider the totality of the circumstances. *See State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013). "[R]easonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as with criminal activity." *Id*.

The trial court heard evidence that the officers were in a high crime area, including gang activity and narcotics sales, late at night. Location and time of day are factors to be considered when conducting a reasonable suspicion analysis. *See Foster*, 326 S.W.3d at 613. Additionally, the officers testified that Appellant was the only one of several individuals to quickly leave the scene when the officers approached. The trial court was entitled to disregard contrary evidence. *See Valtierra*, 310 S.W.3d at 447. Appellant's act of walking briskly away from the officers is another factor to consider. *See Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002). Appellant continued walking away even after Read identified himself as a police officer and instructed Appellant to "stop." Flight, especially from a show of authority, is relevant to whether reasonable suspicion exists. *See Kerwick*, 393 S.W.3d at 276; *see also Reyes v. State*, 899 S.W.2d 319, 325 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd).

Given the totality of the circumstances, the trial court could reasonably determine that Read was aware of specific, articulable facts that, when combined with rational inferences from

4

those facts, lead him to reasonably suspect that Appellant had engaged or was engaging in criminal activity. *See Kerwick*, 393 S.W.3d 270, 274; *see also Hamal*, 390 S.W.3d at 306.

**Arrest and Search**

An officer may conduct a warrantless arrest for any offense committed in his presence or view. TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2005). "Probable cause for a warrantless arrest requires that the officer have a reasonable belief that, based on facts and circumstances within the officer's personal knowledge, or of which the officer has reasonably trustworthy information, an offense has been committed." *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

The record indicates that Appellant immediately began leaving the area when the officers arrived in their patrol vehicles. He continued walking away despite Officer Read's demand that he "stop." Read testified that he arrested Appellant for evading detention, and subsequently searched Appellant. A person commits the offense of evading detention when he intentionally flees from a person he knows is a peace officer attempting to lawfully detain him. TEX. PENAL CODE ANN. § 38.04(a) (West Supp. 2016). "Even a dispirited, brief attempt to walk away from an officer's command to stop has been held to be sufficient flight to constitute evading arrest or detention." *Henderson v. State*, No. 12-09-00399-CR, 2011 WL 2162820, at *5 (Tex. App.—Tyler May 31, 2011, no pet.) (mem. op., not designated for publication).

As previously discussed, Officer Read had reasonable suspicion to briefly detain Appellant to investigate and either confirm or dispel his suspicions of criminal activity. Based on the facts and circumstances within Read's personal knowledge, he could reasonably believe that Appellant was intentionally evading detention. *See Torres*, 182 S.W.3d at 902; *see also* TEX. PENAL CODE ANN. § 38.04(a). Accordingly, Read had probable cause to arrest Appellant without a warrant and to conduct a search incident to arrest. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b); *see also McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). Thus, the trial court did not abuse its discretion by denying Appellant's motion to suppress. *Valtierra*, 310 S.W.3d at 447; *see also Dixon*, 206 S.W.3d at 590. We overrule Appellant's sole issue.

**DISPOSITION**

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered October 5, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 5, 2016

NO. 12-16-00030-CR

**BARRY LYNN ARNOLD,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 145th District Court

of Nacogdoches County, Texas (Tr.Ct.No. F1521593)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*