**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Derek James BECK,**
**Defendant-Appellant.**

No. 78–5703.

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1979.

Robert R. Bryan (Court-appointed), Roger C. Appell, Birmingham, Ala., for defendant-appellant.

J. R. Brooks, U. S. Atty., Frank M. Salter, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before TJOFLAT and VANCE, Circuit Judges, and ALLGOOD,* District Judge.

TJOFLAT, Circuit Judge:

Derek James Beck appeals his convictions under 18 U.S.C. § 659 (1976) on two counts of possession of items worth in excess of $100 that were stolen from an interstate freight shipment. Beck's sole contention before us is that the evidence upon which his convictions rest—the stolen goods—was obtained through an unlawful search and seizure. We agree.

I

On August 1, 1978, at approximately 4:00 p. m., Officers C. T. Spears and N. J. Gober of the Birmingham, Alabama police department were engaged in a routine patrol in their marked police car. Spears had some seven years of police experience. While passing through a predominantly black, high-crime neighborhood, they noticed a Chevrolet automobile containing two black males parked on the left side of the road, driver's door to the curb, with its engine running. The Chevrolet was facing the same direction that the patrol car was going. A Kwik Mart store was located approximately one block down the street. Spears, who testified at the suppression hearing that he knew almost everyone who lived in the community, Record, vol. 2, at 7, observed both occupants of the car and failed to recognize either the driver (appellant Beck) or his passenger as being from the neighborhood. The officers then pulled their patrol car alongside the Chevrolet. Spears engaged Beck and the passenger in conversation, inquiring why they were in the area, and observed that they seemed extremely nervous. Furtive movements were being made by Beck and his passenger as if something were being passed between them.

Spears decided to investigate further, and, as his patrol car was too close to the parked vehicle for him to get out, he pulled forward so he could do so. While pulling forward Spears thought he saw a cigarette come out of the Chevrolet driver's window. After stopping his vehicle, Spears got out, walked back to the Chevrolet, and noticed the cigarette on the ground. He directed Beck to get out of his car, obtained Beck's driver's license, and placed him in the rear of the patrol car. Spears then returned and picked up the cigarette, which appeared to be (and in fact was) marijuana. He also noticed a small plastic bag on the ground beside the open driver's door which contained a syringe and what again appeared to be marijuana. He picked up the bag, looked into the Chevrolet, and observed in plain view another syringe located behind the driver's seat on the floorboard. He then placed the Chevrolet's passenger in the patrol car with Beck, informed both men that they were under arrest for violation of the Alabama Uniform Controlled Substances Act, Ala.Code §§ 20–2–1 to –93 (1975), and read them the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Following these actions, Spears followed normal Birmingham police procedure by conducting an inventory of the Chevrolet's contents prior to impounding the vehicle.

---

* Judge Allgood heard oral argument on this case but did not participate in this decision. This case is being decided by a quorum. *See* 28 U.S.C. § 46(d) (1976).

He opened the trunk and discovered two packages that bore United Parcel Service (UPS) labels; they were later discovered to have been stolen from a UPS interstate shipment. These parcels formed the basis for Beck's convictions.

A two-count indictment was returned against Beck on September 6, 1978, and a plea of not guilty was entered. He moved to suppress the stolen UPS parcels on the ground that they were obtained by the police in violation of his fourth amendment rights. Following a suppression hearing at which Spears was the only witness and where the foregoing facts were developed, the magistrate made several conclusions of law. First, he found that the inventory search of the Chevrolet's trunk was properly conducted under the test of *United States v. Edwards*, 577 F.2d 883, 893–95 (5th Cir.) (en banc) (per curiam), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978), provided the vehicle was properly impounded in the first instance. Turning to the events which led to the impoundment, the magistrate found that Beck was arrested when Spears placed him in the rear of the patrol car. He further determined that this arrest was unlawful because Spears lacked probable cause to make the arrest. He went on to conclude, however, that the search of the Chevrolet was still valid:

> The circumstances available to and within the knowledge of the officer justified his conclusion that the articles found adjacent to the automobile were contraband, came from the automobile at the spot where they were found as a result of some action by one of the occupants of the automobile and justified the officer's further conclusion that additional contraband may have been located in the automobile. Despite the initial invalid arrest, the physical facts available to the officer established probable cause, not only to search the vehicle but to detain its occupants and impound the vehicle. Any taint associated with the invalid arrest of

the defendant has been completely attenuated by the existence of probable cause, based upon the observations made by Officer Spears as to the movement of the defendant and his passenger and the objects located on the ground adjacent to the driver's side of the vehicle.

Record, vol. 1, at 14–15. Accordingly, the magistrate recommended that Beck's motion to suppress be denied.

The district court adopted the magistrate's recommendation and denied the motion to suppress. Beck was then accorded a non-jury trial pursuant to a stipulated record and was found guilty on both counts of the indictment.

## II

The magistrate, in his recommendation that Beck's motion to suppress be denied, seems to have concluded that Beck's illegal arrest was rendered irrelevant because the abandoned items, subsequently determined by Spears to be a narcotic and narcotic paraphernalia, gave him probable cause both to arrest Beck and his passenger and to search the car. Since the contraband was abandoned prior to the illegal seizure of Beck, it was not considered to be the fruit of that unlawful action.

■ We need not consider whether, after Beck's arrest, Spears's ascertainment that the abandoned items were contraband provided untainted probable cause to maintain Beck in custody, arrest the passenger, and search the car; the abandoned contraband was itself the product of unlawful police action and thus cannot be used to validate the subsequent police activity. When Spears and Gober interrupted their patrol by pulling alongside the parked Chevrolet, they clearly took the sort of action contemplated by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in its definition of a "stop": "whenever a police officer accosts an individual and restrains his freedom to walk away, he has [stopped] that person." *Id.* at 16, 88 S.Ct. at 1877.[1] *See,*

---

1. "[I]n the Fourth Amendment sense, the term 'stop' does not mean a physical stop but rather a restraint of movement. Thus, the fact that the car was already stopped at the time the officers approached is of no moment in the constitutional inquiry." *United States v. Robinson*, 535 F.2d 881, 883 n.2 (5th Cir. 1976).

*e. g., Brown v. Texas,* —— U.S. ——, ——, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 352 (1979); *United States v. Roundtree,* 596 F.2d 672, 674 n.1 (5th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 149, —— L.Ed.3d —— (1979) (No. 79–319); *United States v. Carroll,* 591 F.2d 1132, 1135 (5th Cir. 1979); *United States v. Quiroz-Carrasco,* 565 F.2d 1328, 1329 (5th Cir. 1978); *United States v. Almand,* 565 F.2d 927, 929 (5th Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 92, 58 L.Ed.2d 116 (1978). By pulling so close to the Chevrolet, the officers effectively restrained the movement of Beck and his passenger, *United States v. Robinson,* 535 F.2d 881, 883 n.2 (5th Cir. 1976); from the record it is readily apparent that they were " 'not free to ignore the officer[s] and proceed on [their] way.' " *United States v. Elmore,* 595 F.2d 1036, 1041 (5th Cir.), *petition for cert. filed,* No. 78–6884 (U.S. June 21, 1979) (quoting *United States v. Pope,* 561 F.2d 663, 668 (6th Cir. 1977)). While the question of whether particular police activity constitutes a stop for fourth amendment purposes requires a " 'refined judgment,' " *United States v. Elmore,* 595 F.2d at 1041–42 (quoting *United States v. Wylie,* 186 U.S.App. D.C. 231, 237, 569 F.2d 62, 68 (D.C.Cir.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978)), in our view the police action here, viewed in the totality of the circumstances, did constitute such a stop. Hence, it was lawful only if based upon a reasonable suspicion that some criminal activity was afoot. *Brown v. Texas,* —— U.S. at ——, 99 S.Ct. at 2641. In this case, no such suspicion was present.

Spears admitted at the suppression hearing that the *only* reasons he stopped to question the occupants of the Chevrolet were that it was parked with its engine running and he did not recognize its two occupants. Record, vol. 2, at 16–17. The Government would have us assume that Spears was also cognizant of the high-crime neighborhood and the Kwik Mart convenience store nearby. Given that Spears was conscious of these characteristics of the neighborhood, we conclude that what he observed provided no basis for believing that criminal activity was afoot. There is nothing inherently suspicious about two black men sitting in a parked car, with or without the engine running, on a street in a black neighborhood on a midsummer afternoon. They were not offending any traffic ordinance; there was no evidence of recent crimes in the neighborhood, no reason to suspect that Beck or his passenger were wanted by the police, and no other reason to believe that anything unusual was taking place. Spears's mere unfounded feeling that something might be afoot did not warrant his stop of the Chevrolet. Had he observed the vehicle for some time and seen Beck or his passenger take some suspicious actions, a stop might have been permissible, but under the facts here we hold the stop was illegal. *See, e.g., Brown v. Texas,* —— U.S. at ——, 99 S.Ct. at 2640–41; *United States v. Ballard,* 573 F.2d 913, 915 (5th Cir. 1978); *United States v. Shipp,* 566 F.2d 528, 529 (5th Cir. 1978) (per curiam); *United States v. Robinson,* 535 F.2d at 883.

■ Having decided that Spears illegally stopped the Chevrolet *prior* to the abandonment of contraband, we turn to the crucial question—whether this abandonment was still voluntary, or whether it was caused by the illegal stop. We are compelled to reach the latter conclusion, and thus to find that the seizure of the drugs and paraphernalia was tainted by illegal police action. Hence, the arrest of Beck and his passenger and the subsequent discovery of the stolen property were all the fruits of a *Wong Sun v. United States,* 371 U.S. 471, 484–86, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963), tree.

■ While it is true that a criminal defendant's voluntary abandonment of evidence can remove the taint of an illegal stop or arrest, *see United States v. Colbert,* 474 F.2d 174, 176 (5th Cir. 1973) (en banc), it is equally true that for this to occur the abandonment must be truly voluntary and

not merely the product of police misconduct. *United States v. Maryland*, 479 F.2d 566, 568 (5th Cir. 1973) (per curiam). In this case, it seems clear that the contraband was abandoned because of the illegal stop of the Chevrolet. *After* the stop was made, and while Spears was pulling his patrol car in front of the Chevrolet, he observed the marijuana cigarette thrown out Beck's window. The bag containing marijuana and the syringe were presumably discarded at the same time. These acts of abandonment do not reflect the mere coincidental decision of Beck and his passenger to discard their narcotics; it would be sheer fiction to presume they were caused by anything other than the illegal stop. Had Spears observed these items inside the Chevrolet during an unlawful stop they would be suppressed, *see Delaware v. Prouse*, —— U.S. ——, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); the fact that Beck and his passenger threw them out the window onto the ground after the commencement of an illegal stop and just prior to an unlawful arrest does not change this result. Here, because there was "a 'nexus between . . . lawless [police] conduct and the discovery of the challenged evidence' which has not 'become so attenuated as to dissipate the taint,' . . . the evidence should be suppressed." *United States v. Maryland*, 479 F.2d at 568 (quoting *Fletcher v. Wainwright*, 399 F.2d 62, 64 (5th Cir. 1968)). *See, e. g., Lawrence ·v. Henderson*, 478 F.2d 705, 708 (5th Cir. 1973); *Fletcher v. Wainwright*, 399 F.2d at 64–65; *United States v. Coleman*, 450 F.Supp. 433, 436–37 (E.D.Mich.1978); *United States v. Chamblis*, 425 F.Supp. 1330, 1335 (E.D.Mich.1977); *cf., e. g., United States v. Ballard*, 573 F.2d at 916 (consent to search not attenuated from illegal stop). Since the discarded narcotics were tainted

**2.** We do not accept the Government's contention that *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), requires us to affirm Beck's conviction. *Ceccolini* involved live witness testimony discovered through a sequence of events unlike those present here. Accordingly, *Ceccolini* has no bearing on our decision today.

The Government has called *State v. Oliver*, 368 So.2d 1331 (Fla.Dist.Ct.App.1979), to our

by the illegal stop, they cannot be used to validate the search which led to the discovery of the stolen UPS parcels—all are fruits of the initial illegal stop and consequently cannot be used against Beck.[2] *See United States v. Cruz*, 581 F.2d 535, 539 (5th Cir. 1978) (en banc).

### III

For the reasons set forth above, we find the district court erred when it failed to grant Beck's motion to suppress. The judgment of that court is reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

attention. As we have set forth above, prior decisions of this court and the Supreme Court have led us to the result we now reach. *Oliver* gives us no basis for distinguishing these prior decisions.