UNITED STATES of America,
Plaintiff–Appellee,

v.

German Espinosa ROMAN,
Defendant–Appellant.

No. 87–1718.

United States Court of Appeals,
Fifth Circuit.

July 1, 1988.

Bernard J. Panetta, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Janet E. Bauerle, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, KING and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

German Espinosa Roman entered a conditional guilty plea to both counts of an indictment charging, in Count One, that he unlawfully possessed marijuana with the intent to distribute and, in Count Two, that he travelled in interstate commerce to facilitate an unlawful activity involving controlled substances. On appeal, Roman challenges the district court's partial denial of his motion to suppress evidence. Finding no merit in Roman's arguments with respect to the suppression motion, we affirm the judgment of conviction and sentence on Count One. The government concedes, however, that Roman's conviction on Count Two must be vacated. Therefore, we reverse the judgment of conviction and

vacate the sentence imposed on that count. The sentence on the reversed count having been concurrent with the sentence on the affirmed count, we need not remand for resentencing.

## I.

On February 19, 1987, United States Border Patrol agents Bradley Williams ("Williams") and Joe A. Gomez ("Gomez") were assigned to duty at the El Paso International Airport.[1] At approximately 3:15 a.m., Williams saw German Espinosa Roman ("Roman") arrive at the airport with another gentleman. Roman was carrying a brown shoulder bag and a black suitcase with red striping. The other gentleman was carrying a similar suitcase. Both suitcases appeared to be new. Both men entered the terminal but while Roman proceeded to the American Airlines ticket counter, the other gentleman departed the terminal and drove off. At the ticket counter, Roman presented his ticket and checked the two black suitcases before proceeding to the boarding area.

The Border Patrol agents testified that they were suspicious of Roman. Their suspicion was based on the fact that Roman was carrying new luggage. Apparently, agents at the airport had made two other seizures of similar suitcases within the preceding few days—both of which resulted in the discovery of marijuana. Williams and Gomez then went to the American Airlines baggage area, where they were joined by agent Joe Castillo ("Castillo"). The agents squeezed the bags which Roman had checked. The bags were in route to La Guardia Airport in New York City. The suitcases seemed to be approximately equal in weight and each felt as if it contained a solid mass inside. The agents could also discern a faint soapy odor emanating from the suitcases; that odor was known to have been used to mask the smell of marijuana in the past.

At that point, the agents decided to run Roman's bags through an x-ray machine. The agents could observe a solid grey mass in each suitcase, but no indication of shoes or belts, pants with zippers, buttons or any other identifiable type of clothing. Williams took custody of the luggage and brought the bags to the Border Patrol office while Castillo and Gomez boarded Roman's American Airlines flight. The agents approached Roman and identified themselves. Without hesitation, Roman proceeded to hand the agents his permanent resident alien card. The agents asked him if he had checked any luggage. Roman replied that he had not and, when asked if he had any luggage on board the plane with him, removed a carry-on bag from the overhead compartment above him. Roman also stated that he did not have any other luggage. The agents then asked Roman if he would be willing to accompany the agents to their office for further questioning concerning the suitcases they had observed him check in. Roman agreed and they exited the plane.

Once they were off the plane, the agents asked to see Roman's ticket envelope. They meant to surrender the boarding pass and recover the ticket itself so that the ticket would not be invalidated. Gomez noticed that there were no baggage claim checks with the ticket and asked Roman if he had any. Roman replied no but Gomez noticed that there was a staple hole in the ticket packet itself, indicating that there were baggage checks attached to the ticket at one time. While en route to the office, Castillo verbally advised Roman of his *Miranda* rights. When they reached the office, Gomez went back to the departure gate area and the terminal lobby in an effort to locate the baggage checks; he could not find them.

1. In reviewing a district court's ruling on a motion to suppress based on testimony at a suppression hearing, we must accept the district court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law. *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir.1984). Further, we must view the evidence in the light most favorable to the party that prevailed below. *Id.* Therefore, this opinion will reflect, in large measure, the factual findings of the district court below. Those findings are supported by the testimony at the suppression hearing and are, for the most part, undisputed.

Roman was asked whether the suitcases were his and he replied that they were not. Then, Roman was once again advised of his rights from a written form which he read and signed, acknowledging that he understood his rights. The agents then asked Roman two or three times whether the suitcases were his and he consistently answered in the negative, disclaiming knowledge and ownership of the bags. The agents contacted their headquarters and were advised to treat the suitcases as abandoned property. The luggage was opened and found to contain approximately 58 pounds of marijuana.

On March 17, 1987, a federal grand jury returned a two count indictment charging Roman with several violations of federal narcotics laws. Count One alleged that Roman "unlawfully, knowingly, and intentionally did possess with intent to distribute a quantity of marihuana, a Schedule I Controlled Substance," in violation of Title 21, United States Code, section 841(a)(1). Count Two charged Roman with using a facility in interstate commerce to carry on an unlawful activity involving controlled substance offenses, in violation of The Travel Act, Title 18, United States Code, section 1952. On May 12, Roman filed a motion to suppress all the evidence secured as a result of the February 17 incident at the airport. Concluding that Roman had abandoned the suitcases, the district court denied Roman's motion with respect to the marijuana found in the suitcases. Concluding that the agents' removal of Roman from the plane constituted an illegal arrest, however, the district court suppressed all incriminating statements made after the arrest as well as a quantity of currency seized from Roman's person. Subsequently, Roman entered a conditional plea of guilty to the charges against him, reserving the right to appeal the district court's adverse ruling on his suppression motion. Roman was sentenced to a three year term of imprisonment, to be followed by a three year special parole term on each count, the sentences to run concurrently. However, the district court ruled that after Roman serves 179 days of the sentence of imprisonment, the execution of the remainder is

to be suspended and Roman is to be placed on probation with supervision for five years. Roman filed timely notice of appeal, challenging the district court's denial of his motion to suppress.

## II.

■ On appeal, Roman argues that the district court erred by failing to suppress the marijuana found in the suitcases. The district court concluded that Roman, having abandoned his suitcases, lacked standing to challenge either the search of the suitcases or the seizure of the marijuana. *See United States v. Garcia,* 849 F.2d 917, 919 (5th Cir.1988); *United States v. Canady,* 615 F.2d 694, 697 (5th Cir.), *cert. denied,* 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980) (defendant who abandons or disclaims ownership of a suitcase has no legitimate expectation of privacy in that suitcase or its contents and, therefore, cannot challenge a search of that suitcase); *United States v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973) (en banc) ("it is settled law that one has no standing to complain of a search or seizure of property that has been voluntarily abandoned"). When first approached by the agents, Roman stated that he had not checked any luggage. Roman was then asked if he had any luggage aboard the plane; Roman showed the agents his carry-on bag and, in response to their query, told them that he did not have any more luggage. Under the circumstances, we can find no clear error in the district court's finding that Roman abandoned the suitcases. *See Garcia,* at 919.

■ Moreover, we find no merit in Roman's argument that his abandonment was not truly voluntary since it was the product of improper police conduct. *See United States v. Morin,* 665 F.2d 765, 770 (5th Cir.1982); *United States v. Beck,* 602 F.2d 726, 728 (5th Cir.1979); *United States v. Maryland,* 479 F.2d 566, 568 (5th Cir.1973) (per curiam); *United States v. Tolbert,* 692 F.2d 1041, 1045 (6th Cir.1982), *cert. denied,* 464 U.S. 933, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983) (an unconstitutional seizure or arrest

which prompts a disclaimer of property vitiates that act). Here, Roman argues that the agents' squeeze and sniff of his luggage, as well as the agents' x-ray of his bags, both constituted illegal seizures or searches which tainted the abandonment. It is clear that the agents' compression and sniff of Roman's bags did not run afoul of the fourth amendment. *See Garcia,* at 919; *United States v. Lovell,* 849 F.2d 910, 912–13 (5th Cir.1988). However, the government appears to concede, and we will assume for the purpose of this opinion, that the agents' x-ray of Roman's bags was unlawful.

■ In *Beck,* we recognized that an abandonment must be truly voluntary and not merely the product of police misconduct. 602 F.2d at 729–30. In evaluating Roman's argument, we must determine whether there is a causal nexus between the unlawful police conduct and Roman's abandonment of his suitcases. *Beck,* 602 F.2d at 730; *Maryland,* 479 F.2d at 568; *Fletcher v. Wainwright,* 399 F.2d 62, 64–65 (5th Cir.1968). We are unable to find the nexus Roman would have us locate.

We note, for instance, that it is not at all clear that the agents undertook to approach Roman as a result of the x-ray. The results of the x-ray were, for the most part, inconclusive and, given the interest the agents had already shown in the suitcases, it is likely they would have approached Roman in any event. More importantly, we cannot see any connection between the x-ray and Roman's act of free will in abandoning the suitcases. When Roman initially abandoned the suitcases, the agents were engaged simply in asking him questions in a public place, perfectly permissible under the fourth amendment. *See United States v. Gonzales,* 842 F.2d 748, 752 (5th Cir.1988); *see also Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229. Roman's responses to the agents' questions, therefore, were in no way prompted by coercion or detention. In addition, Roman did not know that the agents had x-rayed his bags. He was not even aware that the agents had watched him check in and had examined his bags. The connection between Roman's abandonment and the prior, improper police conduct, therefore, was far too tenuous to provide the requisite causal nexus. Consequently, we can find no clear error in the district court's conclusion that Roman abandoned the suitcases. As a result, we agree with the district court that Roman cannot now challenge the subsequent search of the suitcases. The district court did not err in denying Roman's motion to suppress.

While Roman does not raise the argument on appeal, the government concedes that under our recent decision in *United States v. Hernandez–Palacios,* 838 F.2d 1346 (5th Cir.1988), Roman's conviction on Count Two for violating the Travel Act must be vacated. Therefore, while we affirm the district court's judgment of conviction and sentence as to Count One, we must reverse the judgment of conviction and vacate the sentence imposed on Count Two. As the sentence imposed on Count Two was to run concurrently with the sentence imposed on Count One, resentencing is not necessary. A copy of this opinion is, however, to be attached to the judgment so that prison authorities and the parole board will have accurate information regarding the offense for which Roman stands convicted.

### III.

For the foregoing reasons, the judgment is AFFIRMED IN PART and REVERSED AND RENDERED IN PART.