The appellee, Jeffery Richardson, was indicted for the unlawful possession of marijuana in the second degree, in violation of § 13A-12-213, Code of Alabama 1975. The appellant moved to suppress any and all evidence obtained as a result of the allegedly illegal stop and search. Following the hearing on the motion to suppress, the trial court granted the motion. The State appeals from the order granting the motion. The State argues that, in his written order, the trial judge made no findings of fact and did not issue any opinion explaining his action and, therefore, the State says it is uncertain as to the exact nature of the officers' error. The State argues that the officers had sufficient cause to stop the appellant pursuant toTerry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968), and sufficient cause to conduct the "pat down" that resulted in the discovery of the marijuana, also pursuant toTerry v. Ohio, supra.
The record indicates that two Montgomery police officers were on routine patrol at 1:20 a.m., in an area that they described as a high crime area. They observed an automobile pulled over to the side of the road, apparently parked and empty. As they approached the vehicle, they observed that the brake lights lit up, which, they say, drew their attention to the vehicle and instigated the stop. They then observed a black female walk out of a house located across the street from the car and approach the passenger side of the car. Upon seeing the police car, the woman walked away from the car and down the street. The officers then pulled in behind the car. One of the officers approached the driver of the automobile, while the other officer stopped the female who had continued walking. The officer asked the driver, *Page 401 
who is the appellee, for his driver's license. The appellee stated that he had no license, and the officer asked him to get out of the car. The officer asked the appellant what he was doing, and the appellant stated that he was dropping off a friend. The appellant also apparently indicated that he needed to leave to pick up his children from the Alabama State Fair, which was in Montgomery at the time. The officer knew that this statement was false, because he knew that the fair closed at midnight. The officer then patted the appellee down for weapons. He stated that, when he attempted to feel the exterior of the appellee's pants pockets, the appellee moved so as to avoid the "pat down." The officer felt an oblong and bulky object in the pocket, which he stated felt like a pocketknife. He removed the object, which was a foil-wrapped package, and upon opening it, found that it contained what appeared to be marijuana. It was subsequently determined that the appellant was in possession of more than one gram of marijuana.
Under the facts of this case, the officers were able to articulate a sufficiently particularized basis for a suspicion to justify this investigatory stop. United States v. Cortez,449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). Although the automobile in which the appellant was seated was parked, with the engine idling, at the time of the officers' approach, the officers' actions constituted a stop pursuant toTerry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968). In Ex parte Betterton, 527 So.2d 747 (Ala. 1988), the Alabama Supreme Court acknowledged that the stopping of a vehicle and detention of its occupants constituted a seizure within the meaning of the Fourth Amendment, but addressed the issue of whether the approach by the police of a car that was already stopped and parked in a public place would also constitute a seizure under the Fourth Amendment. The Court concluded that the issue devolved to the question "whether the officer's actions amounted to such an implied restraint or show of authority that 'a reasonable person would have believed that he was not free to leave.' [United States v.] Mendenhall, 446 U.S. [544], 554 [100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)]."Id. at 749-50.
 " '[W]hat does it mean, then, to say that a reasonable person "would have believed that he was not free to leave"? [United States v.] Mendenhall
[446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497
(1980)], [Florida v.] Royer [460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)], and [Immigration Naturalization Service v.] Delgado
[466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247
(1984)] make it perfectly clear that it takes something more than mere questioning by a police officer. Thus, if an officer merely walks up to a person standing or sitting in a public place (or, indeed, who is seated in a vehicle located in a public place) and puts a question to him, this alone does not constitute a seizure. . . .
 " '[T]he mere approach and questioning of [persons seated within parked vehicles] does not constitute a seizure. The result is not otherwise when the officer utilizes some generally accepted means of gaining attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation. The officer may tap on the window and perhaps even open the door if the occupant is asleep. A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so. Likewise, the encounter becomes a seizure if the officer orders the suspect out of the car. So too, other police action which one would expect if the encounter was between two private citizens — boxing the car in, approaching it on all sides by many officers, or use of flashing lights as a show of authority — will likely convert the event into a Fourth Amendment seizure.' "
Id., quoting W. LaFave, 3 Search Seizure § 9.2(h) (2d ed. 1987) (footnotes omitted).
It is clear that where the person in the car would reasonably believe from the circumstances that he is not free to walk *Page 402 
away, the approach of a parked car constitutes a stop.
 "In United States v. Beck, 602 F.2d 726 (5th Cir. 1979), officers familiar with almost everyone in the high-crime neighborhood they were patrolling spotted two unfamiliar men sitting in a car with the motor running near a convenience store. The officers then pulled alongside the car. The Fifth Circuit Court of Appeals held that that was a 'stop':
 " 'When Spears and Gober interrupted their patrol by pulling alongside the parked Chevrolet, they clearly took the sort of action contemplated by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in its definition of a "stop" [seizure]: "Whenever a police officer accosts an individual and restrains his freedom to walk away. . . ." Id. at 16, 88 S.Ct. at 1877.'
"602 F.2d at 728.
 " ' "[I]n the Fourth Amendment sense, the term 'stop' does not mean a physical stop but rather a restraint of movement. Thus, the fact that the car was already stopped at the time the officers approached is of no moment in the constitutional inquiry." ' Beck, 602 F.2d at 728 n. 1 (quoting United States v. Robinson, 535 F.2d 881, 882 n. 2 (5th Cir. 1976).[)]
". . . .
 " '. . . This demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence.' Terry, 392 U.S. at 21 n. 18, 88 S.Ct. at 1880 n. 18. As the Fifth Circuit said in Beck:
 " 'Spears's mere unfounded feeling that something might be afoot did not warrant his stop of the Chevrolet. Had he observed the vehicle for some time and seen Beck or his passenger take some suspicious actions, a stop might have been permissible, but under the facts here we hold the stop was illegal.'
"602 F.2d at 729."
Ex parte Betterton, supra, at 750-51 (Justice Beatty dissenting).
On cross-examination at trial in the present case, one of the arresting officers testified that the defendant was not free to go when he approached the car. In response to one of defense counsel's questions, he said that if, upon being approached by the officers, the appellant had stated that he did not have time to talk or had something else he needed to do, he would not have been allowed to leave. The officer testified that he believed that he had sufficient articulable suspicions before he actually approached the parked vehicle. The officer testified that he had seen the appellant apply the brakes so as to illuminate the brake lights when his vehicle was approached by the officers' vehicle and that he had seen the female take evasive action when she saw the police officers. These gestures, combined with the other circumstances, such as the apparently unoccupied vehicle being parked in the early morning hours in a high crime area, provided the officers with sufficient articulable suspicions to justify the investigatory stop.
Upon further investigation, the officers learned that the appellant was seated behind the wheel of the automobile, with the engine running, without a driver's license, at which point he was asked to get out of the car. The appellant was then patted down for weapons. In Terry v. Ohio, supra, the United States Supreme Court held that a limited search for weapons was partially justified by the need to protect the arresting officer from assault with a concealed weapon. "In determining whether a police officer had a basis for initiating a frisk, there are two matters to be considered: whether the officer had a sufficient degree of suspicion that the party frisked was armed and dangerous; and whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed." LaFave, Search Seizure § 9.4(a) (2d ed. 1987). By concluding that the officer had sufficient articulable suspicion to make the investigatory stop, we also conclude that the officer was rightfully in the presence of the appellant, being the party frisked. Moreover, the United States Supreme Court stated in Terry v. Ohio, supra: *Page 403 
 "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Cf. Beck v. Ohio, 379 U.S. 89, 91 [85 S.Ct. 223, 224, 13 L.Ed.2d 142] (1964); Brinegar v. United States, 338 U.S. 160, 174-176
[69 S.Ct. 1302, 1310-1311, 93 L.Ed. 1879] (1949); Stacey v. Emery, 97 U.S. 642, 645 [24 L.Ed. 1035] (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Cf. Brinegar v. United States supra."
392 U.S. at 27, 88 S.Ct. at 1883.
 "We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous; . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
Terry v. Ohio, 392 U.S. at 30, 88 S.Ct. at 1884.
In light of the totality of the circumstances in the present case, the officers' investigatory stop and the pat down of the appellant was proper. Therefore, the trial court's determination that the motion to suppress the evidence should be granted was erroneous. The judgment is due to be reversed and the cause remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
All Judges concur.