Filed 9/13/16  P. v. Rodriguez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

<table>
<tr><td>

THE PEOPLE,

  Plaintiff and Respondent,

v.

JOSEPH STEPHEN RODRIGUEZ,

  Defendant and Appellant.

</td><td>

2d Crim. No. B264940
(Super. Ct. No. 1448206)
(Santa Barbara County)

</td></tr>
</table>

Appellant Joseph Stephen Rodriguez was drinking beer in a public park at lunchtime.  A police officer on the lookout for a "male" suspected of a narcotics transaction approached him.  Rodriguez admitted that he had another beer in his backpack.  The officer asked if he could retrieve it, and Rodriguez consented.[1]  The

---

[1] According to the officer, he asked, "'Do you mind if I retrieve the beer,'" and Rodriguez "consented to me getting a beer out of the backpack."  Although the officer agreed with the prosecutor's statement that Rodriguez "gave [him] consent to search the backpack," when asked to clarify "how [he] asked the question," the officer explained, "[Rodriguez] told me there was another beer in [his backpack].  [¶]  I asked him, 'Can I get the beer out of there?'"  Rodriguez said, "'Yes.'"  The officer's partner confirmed that "[Rodriguez] told [the officer] he could open the backpack and remove the can of beer from inside."  The People have never asserted that Rodriguez consented to a general search of his backpack and have forfeited any such argument.  (See *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1242 ["[A]ppellate courts should not consider a Fourth Amendment theory for the first time on appeal when 'the People's new theory was

officer, however, exceeded that authorization and searched the entire knapsack, revealing methamphetamine and a smoking pipe.

Rodriguez was charged with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and possession of paraphernalia used for smoking methamphetamine (*id.* former § 11364.1, subd. (a)). The trial court denied his motion to suppress the evidence. (Pen. Code, § 1538.5.) He pled guilty to methamphetamine possession and was placed on probation for three years with terms and conditions. The trial court dismissed the remaining count. (*Id.* § 1385.)

Rodriguez contends that the trial court erred in denying his suppression motion because the warrantless search of his backpack violated his Fourth Amendment rights. The People advance several justifications for the search. None apply; we reverse.

FACTS AND PROCEDURAL BACKGROUND

Sergeant Warren Holtke and his partner went to Ortega Park in Santa Barbara after a narcotics detective reported seeing a "male" whom he "believed" was making a "quick hand-to-hand" narcotics transaction. Ortega Park has a high level of crime.

Holtke saw Rodriguez sitting at a picnic table holding an open can of beer.[2] When Rodriguez saw Holtke approaching he set the beer on the ground in an effort to hide it. He was unsuccessful; Holtke picked up the beer. Rodriguez admitted that it was his in response to Holtke's question after first denying it. Holtke asked "if he had any

---

not supported by the record made at the first hearing and would have necessitated the taking of considerably more evidence' or when 'the defendant had no notice of the new theory and thus no opportunity to present evidence in opposition'"].) They have consistently characterized his consent as "limited" to the retrieval of the beer.

[2] (See Santa Barbara Mun. Code, § 9.05.010 [prohibiting in general "possession [of] any bottle, can or other receptacle containing any alcoholic beverage which has been opened . . . upon any public . . . park"]; Bus. & Prof. Code, § 25620, subd. (a) [violation of local open-container ordinances an infraction]; Pen. Code, § 19.8, subd. (b) [infractions punishable by fine up to $250].)

stuff on him that [Holtke] needed to be aware of." Holtke asked to search Rodriguez and Rodriguez consented. Nothing was found.

Holtke noticed Rodriguez's backpack on the bench about a foot away. Holtke "asked . . . if [Rodriguez] had anything in the backpack that [he] needed to be concerned with." Rodriguez "told [him] there was another beer in there" as well as some clothes. Holtke asked, "'Can I get the beer out of there?'" Rodriguez said, "'Yes.'"

When Holtke opened the backpack, he immediately found a cold beer. As he was removing it, he saw at the bottom of the backpack "at least two little inch-by-inch Ziploc bags," which he knew to be used in packaging narcotics. He could not tell whether anything was inside them. To get to the bags, he removed a rolled-up t-shirt that had "a hard lump inside" it. As soon as he removed the t-shirt, Rodriguez said, "That's not mine."

Sergeant Holtke unrolled the t-shirt, which contained a black felt sunglass case. He opened the case and found a glass cylindrical pipe with a white residue. It appeared to be a methamphetamine pipe. He also found a bag containing off-white crystal shards that appeared to be methamphetamine. The entire encounter, from the initial contact with Rodriguez to his arrest, lasted eight to ten minutes.

The trial court denied the suppression motion "given the totality of the circumstances." It found that Rodriguez exhibited "suspicious" and "inconsistent" behavior based on his attempt to hide the open beer can and his initial denial that it was his.[3]

---

[3] Defense counsel argued, "Feeling something hard in a sunglass case does not rise to probable cause. People have baggies in their backpack sometimes, a plastic baggy." In response, the trial court stated, "It's true." The court then ruled: "There was some inconsistent behavior on [Rodriguez's] part. First he said the beer was not his and then admitted it was. So that made it look somewhat suspicious. Also, when the officer arrives the beer is put down and, granted, he could have done that just to avoid a public offense of having an open container. I appreciate that. [¶] I think given the totality of circumstances, the motion [to suppress] is denied."

DISCUSSION

The Fourth Amendment protects "against unreasonable searches" by the police. (U.S. Const., 4th Amend.) Evidence obtained in violation of this guarantee may not be used in a subsequent prosecution. (*Mapp v. Ohio* (1961) 367 U.S. 643, 655.) On review of a ruling denying a motion to suppress such evidence, we view the facts most favorably to the prosecution and uphold the trial court's factual findings if supported by substantial evidence. (*People v. Woods* (1999) 21 Cal.4th 668, 673.) We decide independently whether the search was reasonable under the Fourth Amendment. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.)

The officer's initial foray into Rodriguez's backpack was lawful because the officer had his consent to remove the beer can inside; that was what the sergeant sought and that is the consent he received: no more, no less. Once the officer removed the beer—the "expressed object" of the search—it was unreasonable for him to continue rummaging through the backpack for other items based on Rodriguez's consent. (See *Arizona v. Hicks* (1987) 480 U.S. 321, 325 ["taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the [place being searched] or its contents" constituted search requiring probable cause].) If his curiosity was aroused and he had wished to search further he only had to ask.

The People argue that Rodriguez "lacked a legitimate expectation of privacy in the shirt" because he "expressly denied that the shirt belonged to him at the time of the search." While it is true that the Fourth Amendment does not proscribe the search and seizure of property which the defendant has voluntarily abandoned (*Abel v. United States* (1960) 362 U.S. 217, 241), "it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct. [Citation.]" (*United States v. Beck* (5th Cir. 1979) 602 F.2d 726, 729-730.) Since Rodriguez initially stated that the clothes inside the backpack belonged to him and did not disclaim ownership of the t-shirt until after the officer began searching it, his disclaimer did not constitute a voluntary abandonment unless the search of his backpack

4

was justified.  (See *United States v. Ojeda-Ramos* (10th Cir. 2006) 455 F.3d 1178, 1187 [abandonment "is not voluntary if it results from a violation of the Fourth Amendment"].)

In arguing that the search of the backpack was lawful, the People also rely on the "plain view" doctrine.  "The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity.  [Citation.]"  (*Illinois v. Andreas* (1983) 463 U.S. 765, 771.)  The People assert that, under the totality of the circumstances, the officer's "[seeing] the two Ziploc baggies" made their "incriminating nature readily apparent and established probable cause to suspect that [Rodriguez] was engaged in illegal drug activity."  We disagree.

"[W]here the container is a common one with legitimate purposes, its presence is not enough to establish probable cause.  [Citations.]"  (*People v. Nonnette* (1990) 221 Cal.App.3d 659, 666.)  Ziploc bags "are commonly used to store food and a wide variety of other wholly legitimate objects . . . ."  (*People v. Huntsman* (1984) 152 Cal.App.3d 1073, 1083.)  "Our Supreme Court has condemned the inference that a package commonly used for legitimate purposes contains contraband simply because others like it often do."  (*Id.* at p. 1084.)  Here, it was the middle of the day and Rodriguez was seated at a park bench drinking a beer.  The officer had no reason to suspect the plastic bags in his backpack contained drugs rather than something innocuous like a lunchtime snack, if anything at all.

The People point to Rodriguez's "suspicious" and "somewhat inconsistent" behavior.  The Washington Supreme Court responded to a similar argument in *State v. Neth* (2008) 165 Wash.2d 177.  The court held that there was no probable cause to search the vehicle of a "suspicious" defendant who, among other things, "possessed clear plastic bags that drug traffickers are known to use for carrying illegal drugs" and told "inconsistent versions of events."  (*Id.* at pp. 183-184; see also p. 185 ["[A]bsent some other evidence of illicit activity, the mere possession of a few empty, unused plastic

5

baggies . . . does not constitute probable cause to search . . . , even when combined with nervousness [and] inconsistent statements"].)

That the park was a high-crime area where a "male," it was "believed," had earlier conducted a "hand-to-hand" narcotics transaction did not give rise to probable cause that a crime was being committed. In *State v. Neth*, the court suggested in dictum that "[a]dditional information such as being in a high *drug* crime area, baggies with the appearance of having *once contained illicit substances*, or observations of transactions *involving the baggies* may well have been sufficient." (*Id.*, *supra*, 165 Wash.2d at p. 185, fn. 3, italics added.) Here, however, the officer made no observations that connected Rodriguez to the suspected drug activity. The officer did not testify that drug crimes were common in the park or that baggies had been used in the suspected drug transaction earlier. The only thing "suspicious" or "inconsistent" about Rodriguez's behavior was his understandable reluctance to acknowledge that he had an open container of alcohol in public.

The cases upon which the People rely are distinguishable. In *People v. Nonnette*, the officer was investigating a specific car "containing four males who were ducking up and down" that a caller had reported as being suspicious. (*Id.*, *supra*, 221 Cal.App.3d at p. 662.) It was parked on the street in an area of high drug activity in Sacramento despite being registered in Los Angeles, an area from which the officer "knew drugs came," and the driver stated he was staying at an address 30 minutes away. (*Id.* at pp. 662-663.) The officer observed "a bundle of tiny baggies" which he suspected of being used in drug sales. (*Id.* at p. 663.) Here, in contrast, Rodriguez was sitting at a picnic table in a park, a location where people commonly linger for lawful purposes, drinking a cold beverage on a summer day. There was no evidence that he was far from home. He was not acting suspiciously other than his maladroit attempt to hide his beer consumption from the officer.

In *People v. Lilienthal* (1978) 22 Cal.3d 891, the officer stopped a driver for a traffic violation at 3:15 a.m. When the driver stepped out of the car and fumbled for his license, he dropped a folded piece of paper on the ground and immediately placed his

foot over it. The officer, based on his experience, recognized it as a paper bindle used to transport cocaine or heroin. (*Id.* at pp. 897-898.) Unlike the suspect in *Lilienthal*, Rodriguez made no attempt to hide or conceal anything in his backpack prior to the search. More importantly, the probable cause in *Lilienthal* was primarily due to "the distinctive manner in which the paper was folded . . . . Reasonable grounds for believing a package contains contraband may be adequately afforded by the package's shape, design, and the manner in which it is carried. [Citation.]" (*Id.* at pp. 898-899.) "[C]ommon containers, however, such as pill bottles, cigarette packs, plastic bags and film canisters are seen as more generic and may not be seized merely because they may be used to store narcotics. [Citation.]" *People v. Holt* (1989) 212 Cal.App.3d 1200, 1205.)

The People also contend that the search of Rodriguez's backpack may be upheld as a search incident to a lawful arrest for the infraction of having an open container of alcohol in a public park. They reason as follows: (1) "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender" (*Atwater v. City of Lago Vista* (2001) 532 U.S. 318, 354); (2) the officer may search the individual before arresting him so long as "the formal arrest followed quickly on the heels of the challenged search" (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 111); and (3) an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause" (*Devenpeck v. Alford* (2004) 543 U.S. 146, 153).

The People's argument is unpersuasive.[4] We agree with our colleagues in the Sixth District that more recent authority from the high court conflicts with the People's reasoning. (See *People v. Espino* (2016) 247 Cal.App.4th 746, 763 [rejecting argument "that as long as the police *could have* constitutionally arrested defendant for

---

[4] This issue is currently before the California Supreme Court in *People v. Macabeo*, review granted November 25, 2014, argued May 4, 2016, submission vacated July 29, 2016, S221852.

speeding, it does not matter that they arrested him for some other unrelated offense" for which they lacked probable cause at the time of the challenged search].)

In *Rodriguez v. United States* (2015) __ U.S. __ [135 S.Ct. 1609; 191 L.Ed.2d 492] (*Rodriguez*), the Court held that, in the context of a vehicle stop for a traffic violation, "a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing'" that is "unrelated" to the purpose of the stop but not per se unreasonable, violates the Fourth Amendment if "conducting [it] 'prolongs'—*i.e.*, adds time to—'the stop.'" (*Id.* at pp. 1615, 1616.) The Court explained that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop [citation] and attend to related safety concerns [citation]. [Citations.] Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.' [Citations.] Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. [Citation.]" (*Id.* at p. 1614.) The majority rejected Justice Thomas's dissenting view, which the People advance here, that "the offense establishing probable cause [need not] be 'closely related to' the offense" for which the suspect is arrested. (*Id.* at p. 1619, Thomas, J., dissenting.)

The same analysis applies here. The officer contacted Rodriguez because he was observed committing an infraction—possessing an open container of alcohol in a public place. After eliciting Rodriguez's admission that the opened beer belonged to him—at which point the investigation of the open container violation was complete—the officer began investigating the lawfully possessed unopened beer in his backpack. That investigation ended once the officer removed the cold beer from the backpack.

At that point, however, the officer's lawful authority (right) to continue the search had ended. The ensuing extended search for evidence of an unrelated drug crime prolonged the encounter "'longer than [was] necessary to effectuate [its] purpose.'" (*Rodriguez, supra*, 135 S.Ct. at p. 1614.) Therefore, it violated the Fourth Amendment and the drug evidence should have been suppressed.

8

DISPOSITION

The judgment is reversed.

NOT TO BE PUBLISHED.


PERREN, J.


I concur:


TANGEMAN, J.

YEGAN, Acting P. J., Dissenting:

I respectfully dissent.

First, the majority opinion commits a fundamental mistake by misreading the record. It draws inferences that were impliedly rejected by the trial court. There is no question that at one point, the officer asked appellant if he could "retrieve" the beer from the backpack. But at another point in the testimony, the officer unequivocally testified that he was given permission to search the backpack, not just retrieve the beer. On cross-examination, defense counsel asked: "You said, 'Can I retrieve the beer' correct?" The officer answered, "I asked him if I could search the backpack, yes". A traditional reading of the record allows these two pieces of evidence to coexist. That is to say, appellant both consented to a search of the backpack and also agreed the officer could "retrieve" the beer from the backpack. If the record can be so read, and I submit that it can, the majority opinion violates the "rule of conflicting inferences" (9 Witkin Cal. Procedure (5th ed.2008) Appeal § 376, pp. 434-435.) A reasonable inference unless "wholly irreconcilable" with the evidence, is "conclusive" on appeal. (*Phillips v. Campbell* (Aug. 23, 2016, B263353) __ Cal.App.4th __ [2016 Cal.App. LEXIS 709].)

Second, it is too late in the day to say that the trial court factually found that the officer only had a limited consent to retrieve the beer. When defense counsel orally argued that this was a limited consent and that the officer exceeded the scope of the consent, the trial court made no express ruling thereon. It just denied the motion. This is an implied finding that there was no limited consent and an implied finding that there was a general consent. These findings are binding on appeal. (See, e.g., *People v. Woods* (1999) 21 Cal.4th 668, 673 ["'all factual conflicts must be resolved in the manner most favorable to the [trial] court's disposition on the [suppression] motion.'"].) "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect? [Citations.]" (*Florida v. Jimeno* (l991) 500 U.S. 248, 251.) Here the officer believed he had consent to search the backpack and the trial court impliedly so found. This was and is objectively reasonable.

Third, when the officer lawfully opened the backpack, he observed not traditional four-inch by four-inch sandwich baggies but small one-inch baggies. They did not contain finger sandwiches. They were empty. Of course, such small bags can be used innocently. But they are also used to sell drugs. The officer knew that. He was minding his own business at the police station when it was reported that someone was selling drugs in the park. That is why he went to the park, a high crime area. These three items, coupled with trying to conceal evidence and lying to the police concerning ownership of the beer, were, as the trial court said, "suspicious". (See discussion, *infra.*) This seems to me to be an understatement. Even if the officer did not believe that there was probable cause to search inside the T-shirt to determine what hard object was therein, such was not required. Appellant denied ownership of the T-shirt and its contents by saying: "That is not mine." To a reasonable officer, this was a disavowing of ownership. "[A] disclaimer of proprietary or possessory interest in the area searched or the evidence discovered terminates the legitimate expectation of privacy over such area or items. [Citation.]" (*People v. Stanislawski* (l986) 180 Cal.App.3d 748, 757; see also *People v. McPeters* (1992) 2 Cal.4th 1148, 1172.) So appellant had no reasonable expectation of privacy in the contents of the T-shirt. He is not permitted to advance a search and seizure claim as to evidence which he says does not belong to him.

Fourth, the exclusionary rule requires only the suppression of evidence where the police have behaved unreasonably. Quite apart from the infraction of having alcohol in the park, there was probable cause to arrest appellant on at least two theories. He attempted to conceal evidence, a misdemeanor when he attempted to move and conceal the beer from the officer's sight. This was a violation of Penal Code section 135 and, thus there was probable cause to arrest him for this offense. (See, e.g., *People v. Mijares* (l971) 6 Cal.3d 415, 422.) Second, he provided false information to a peace officer by first denying that the beer was his and then admitting it. This delayed and obstructed the officer in violation of Penal Code section 148, subdivision (a). There was probable cause to arrest him for this offense. The officer did not purport to arrest appellant for these two offenses but he is allowed to conduct a search incident to a lawful

2

arrest as long as there is contemporaneous probable cause to do so. (See, e.g., *People v. Cockrell* (l965) 63 Cal.2d 659, 666.) "[I]f before making a search and seizure officers are justified in making an arrest it is immaterial that the search and seizure preceded rather than followed the arrest. [Citations.]" (*Ibid.*; see also 4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Illegally Obtained Evidence § 199, p. 994.)

Fifth, there is no reason to punish the police and the People for the actions of this officer which I believe were reasonable in the circumstances. "Suppression of evidence . . . has always been our last resort, not our first impulse." (*Hudson v. Michigan* (2006) 547 U.S. 586, 591.) The majority opinion reverses this priority. The result reached stretches the factual and legal fabric of the Fourth Amendment to the breaking point. The thought that an 18-year veteran, supervising field sergeant investigating drug sales in the park would only seek permission to retrieve beer is simply far-fetched. He went to the park to conduct a narcotics sales investigation, not to enforce park alcohol rules. Here it is not the constable who has blundered. (*People v. Schofield* (2001) 90 Cal.App.4th 968, 976 citing *People v. Defore* (l926) 242 N.Y. 13, 21 [150 N.E. 585, 587].) I would affirm the order denying suppression.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

3

Michael J. Carrozzo, Judge

Superior Court County of Santa Barbara

_____

Gusdorff Law and Janet Gusdorff, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Amanda V. Lopez, Deputy Attorney General, for Plaintiff and Respondent.